UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Linda Cooper and Emily Cooper</u>

    v.

<u>White Mountain Community</u>
<u>Health Center</u>

Case No. 24-cv-265-SE
Opinion No. 2025 DNH 103

# **O R D E R**

Like many healthcare companies, defendant White Mountain Community Health Center implemented a policy in late 2021 requiring its employees to become vaccinated against COVID-19 as a condition of employment. Linda Cooper and Emily Cooper, both of whom worked for White Mountain, refused to comply with the policy and were fired.[1] They bring claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and New Hampshire state law. White Mountain moves for judgment on the pleadings on all but a portion of one claim, arguing that the plaintiffs have failed to state plausible claims for relief. The plaintiffs object and also move for leave to file an amended complaint. White Mountain objects to the request for leave to file an amended complaint, contending that amendment would be futile and that the plaintiffs have not shown good cause to amend the complaint under Federal Rule of Civil Procedure 16(b).

---

[1] As discussed further below, it is somewhat unclear whether Linda resigned before being fired.

Background[2]

I.     Linda Cooper

Linda Cooper worked for White Mountain as a Medical Assistant/Medication Bridge Coordinator from September 6, 2011, until November 5, 2021. On approximately October 19, 2021, White Mountain implemented a policy requiring its employees to become vaccinated against COVID-19. The following day, Linda emailed White Mountain a resignation letter effective November 19, 2021. She alleges that she "did so under duress because she believed [White Mountain] would terminate her due to her refusal to be vaccinated . . . ." Doc. no. 1-1, ¶ 19.

On approximately October 30, 2021, Linda met with Ken Porter, White Mountain's Executive Director. Linda stated that she believed that the vaccine mandate was illegal and unconstitutional and asked to be able to work remotely or in-person but be subject to weekly testing rather than mandatory vaccination. Porter did not agree to the accommodations. Linda told Porter "that it was not anyone's business what her religious beliefs were and that if she filed for a religious exemption, she would be judged more due to her religious beliefs." Id., ¶ 23. The complaint alleges that "Porter basically agreed with her" and, based on that conversation, Linda believed that submitting a request for a religious exemption due to her Wiccan faith would be futile. Id. She later learned that White Mountain denied two other employees' requests for religious exemptions to the vaccination policy.

---

[2] These facts are taken from the complaint, viewed in the light most favorable to the plaintiffs. They are consistent with the allegations in the proposed amended complaint.

Linda declined to get vaccinated against COVID-19 by the November 5, 2021 deadline. White Mountain terminated her employment on that date.

II.     Emily Cooper

Emily Cooper worked for White Mountain as a Front Office Coordinator from October 6, 2019, until November 5, 2021.[3] After White Mountain implemented the vaccination policy on October 19, 2021, Emily emailed Porter to ask for further details, such as the deadline by which employees were required to be vaccinated. Porter did not know. Either during that email exchange or shortly thereafter, Emily made it known to White Mountain that she would not comply with the vaccination policy. See doc. no. 1-1, ¶¶ 38, 41.

In September 2021, Emily was promoted to supervisor and "was supposed to get a raise right before" White Mountain implemented the vaccination policy.[4] Doc. no. 1-1, ¶ 41. On October 25, 2021, Emily asked Porter if she would still be getting a raise. Porter replied, "No, not anymore." Id.

---

[3] The complaint lists two different dates on which White Mountain allegedly terminated Emily's employment. First, it alleges that White Mountain fired Emily on November 5, 2021. Doc. no. 1-1, ¶ 33. Later, it alleges that White Mountain fired Emily on November 19, 2021. Id., ¶ 51. The exact date of Emily's termination does not change the court's analysis regarding any issue in this case.

[4] The complaint alleges only that Emily "was supposed to get a raise right before Covid," doc. no. 1-1, ¶ 41, which White Mountain interprets to mean that she was supposed to get a raise "presumably in or around February or March 2020," doc. no. 10 at 18. The plaintiffs state in their objection that the quoted language in their complaint was intended to read "before the Covid mandate," meaning the vaccination policy. Doc. no. 13-1 at 14. They later specify that White Mountain promised the raise in September 2021. Id. Because the timing of the proposed raise does not change the court's analysis, the court credits the plaintiffs' representations in their objection, which are consistent with the allegations in the proposed amended complaint (doc. no. 15-1).

3

Despite repeated questioning, Porter did not provide Emily with the deadline to be vaccinated until October 28, 2021. On that date, Cooper, who had drafted a request for a religious exemption based on her Catholic faith and objection "to the use [of] aborted fetuses in the development of the vaccine," doc. no. 1-1, ¶ 79, asked Porter if she could submit the request. Porter informed her that White Mountain would not accept it. White Mountain fired Emily on November 5, 2021, for failing to comply with the vaccination policy.

III.     Asserted Counts

The complaint includes four counts on behalf of each plaintiff. The first three counts allege that White Mountain violated Title VII and New Hampshire Revised Statute Annotated ("RSA") § 354-A by discriminating against them on the basis of their religion: religious discrimination based on harassment/hostile work environment (Count I); religious discrimination based on a failure to accommodate (Count II); and retaliation based on religion (Count III).[5] The complaint also asserts a claim for wrongful discharge under New Hampshire common law (Count IV).

## Discussion

White Mountain does not move for judgment on Emily Cooper's failure-to accommodate claim (in Count II) but moves for judgment on the pleadings on all other claims. Doc. no. 10. The plaintiffs object in part. They state that they do not object to the motion to the extent that it

---

[5] "Because the New Hampshire Supreme Court relies on Title VII cases to analyze claims under RSA 354–A, the court will address [the plaintiffs'] state and federal claims together using the Title VII standard" when discussing them in this order. Hubbard v. Tyco Integrated Cable Sys., Inc., 985 F. Supp. 2d 207, 218 (D.N.H. 2013) (quotation and alteration omitted).

seeks dismissal of the religious discrimination claims based on harassment/hostile work environment (Count I) or of Linda Cooper's claim for retaliation based on religion (in Count III). See doc. no. 13 at 1-2. They object to the remainder of the motion.

Two weeks after filing their objection, the plaintiffs moved for leave to file an amended complaint. Doc. no. 15. The proposed amended complaint removes Count I and Linda's claim in Count III and adds certain additional factual allegations. White Mountain objects to the motion for leave to amend. "Because allowing plaintiffs' proposed amended complaint would moot the defendants' motions for judgment on the pleadings, the court must first consider the motion to amend." Fujifilm N. Am. Corp. v. M&R Printing Equip., Inc., 565 F. Supp. 3d 222, 227 (D.N.H. 2021)

I. Motion for Leave to File an Amended Complaint

White Mountain argues that the court should deny the motion for leave to amend for two reasons. First, allowing the plaintiffs to amend their complaint would be futile because the proposed amended complaint does not state a plausible claim for relief. Second, the plaintiffs have not shown good cause to amend the complaint under Federal Rule of Civil Procedure 16(b).

A. Futility

"A futile amendment is one that would fail to state a claim upon which relief can be granted. When, as here, a plaintiff files a motion to amend in response to one or more motions for judgment on the pleadings and discovery is not yet complete, the futility inquiry mirrors the analysis applied under Federal Rule of Civil Procedure 12(b)(6)." Fujifilm, 565 F. Supp. 3d at 227 (citations and quotations omitted).

To review the sufficiency of the claims under that standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013). The court must employ a two-step approach. First, it must identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678 (alterations omitted)). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations. See id. Only then can the court determine whether the "combined allegations, taken as true, . . . state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010).

The proposed amended complaint adds a limited number of factual allegations. These allegations can be grouped into two buckets: those elaborating on Linda's religious beliefs and those clarifying the timing of Emily's promised raise. For the sake of clarity, the court begins by discussing the allegations in the complaint concerning those topics and the allegations' purported deficiencies that White Mountain identifies in its motion for judgment on the pleadings. The court then turns to the additional facts alleged in the proposed amended complaint.

        1.     <u>Linda's Religious Beliefs</u>

As mentioned, the plaintiffs agree in their objection to White Mountain's motion for judgment on the pleadings to dismiss Count I in its entirety and to dismiss Linda's retaliation

claim in Count III. They also omit those claims from their proposed amended complaint. Therefore, the proposed amendments concerning Linda's religious beliefs are relevant only to Linda's failure-to-accommodate claim in Count II.[6] The court discusses them in that context.

"Under Title VII, an employer must offer a reasonable accommodation to resolve a conflict between an employee's sincerely held religious belief and a condition of employment, unless such an accommodation would create an undue hardship for the employer's business." Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004) (citing 42 U.S.C. § 2000e(j)). The First Circuit "applies a two-part framework to religious discrimination claims under Title VII. First, a plaintiff must make her *prima facie* case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023) (citation and alterations omitted). "If the plaintiff establishes her *prima facie* case, the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." Cloutier, 390 F.3d at 133.

The complaint contains a single allegation about the specifics of Linda's religious beliefs. It states: "The basis for Linda Cooper's religious beliefs is her Wiccan faith."

There is little doubt that, as White Mountain argues in its motion for judgment on the pleadings, the complaint does not make out a *prima facie* case that Linda held a bona fide religious belief that conflicted with the vaccination policy. The complaint provides no details regarding Linda's religious beliefs, much less any that conflicts with the policy. See, e.g., Griffin v. Massachusetts Dep't of Revenue, No. 22-CV-11991-FDS, 2023 WL 4685942, at *6 (D. Mass.

---

[6] The allegations are also conceivably relevant to Linda's wrongful discharge claim in Count IV, but that claim fails for a reason independent of the allegations in the proposed amended complaint as discussed below.

7

July 20, 2023) (holding that "a simple *ipse dixit* by the plaintiff—'this employment requirement conflicts with my religion'—is not sufficient to allege" a bona fide religious belief that conflicts with an employment requirement).

Further, as White Mountain argues in its motion, it cannot be liable for failing to accommodate Linda's religious beliefs based on the allegations in the complaint because she did not request a religious exemption. The complaint alleges that Linda emailed White Mountain a resignation letter on approximately October 20, 2025, the day after White Mountain implemented the vaccination policy. She met with Porter 10 days later and stated "that it was not anyone's business what her religious beliefs were and that if she filed for a religious exemption, she would be judged more due to her religious beliefs. Porter basically agreed with her." Doc. no. 1-1, ¶ 23.

The plaintiffs concede that Linda did not specifically request a religious exemption to the vaccination policy, though she contends that her conversation with Porter regarding a religious exemption should "qualif[y] as a request for an accommodation, as such requests may be informal, or at a minimum it placed Defendant on notice of the need for an accommodation." Doc. no. 13-1 at 9. But nowhere do the plaintiffs allege that Linda requested an accommodation tied to her religious beliefs, formally or informally. Instead, the complaint specifically alleges that Linda was unwilling to reveal her religious beliefs to her coworkers because she felt that her beliefs were private and that her coworkers may judge her for them. At best, the complaint alleges that Linda requested the opportunity to avoid the vaccine for a myriad of reasons. This is insufficient to state a claim for religious discrimination.

The plaintiffs also argue that the complaint states a claim for denial of a religious accommodation on Linda's behalf even absent her request for an exemption. In support, they cite

Moore v. Health Care & Rehab. Servs. of Se. Vermont, Inc., No. 24-CV-031-SE-TSM, 2024 WL 4285898, at *1 (D.N.H. Sept. 25, 2024). In Moore, this court denied a motion to dismiss a claim for failure to accommodate the plaintiff's religious beliefs, similar to the claim Linda attempts to bring here. Although the plaintiff did not submit a request for a religious exemption to her employer, the court relied on the fact that she alleged that a supervisor informed her that the defendant would not grant any such requests and that the defendant "discouraged her and other employees from requesting exemptions by making the process arduous and invasive." Id. at *4.

The facts alleged here are different. The plaintiff in Moore concluded that a request would be futile because her supervisor told her that it would be. Linda submitted her letter of resignation the day after White Mountain implemented the vaccination policy, before she had any discussions regarding a religious exemption. And, again, in her subsequent conversation with Porter, she indicated that she specifically did not want to submit a request for a religious exemption because she felt that her religious beliefs were private and she did not want to be judged. These facts simply do not excuse Linda's failure to submit a request for a religious accommodation, and the plaintiffs make no cogent argument that they do.

The facts surrounding Emily's decision to forego submitting a request for a religious exemption highlight the legal insufficiency of Linda's failure-to-accommodate claim. The complaint alleges that Emily drafted a request for a religious exemption "but never filed it because both Mr. Porter and Ms. Hill told her that there was no point submitting a religious exemption as [White Mountain] was not accepting any exemptions."[7] Doc. no. 1-1, ¶ 46. As this

---

[7] Neither the complaint nor the proposed amended complaint alleges that Linda was aware of Emily's conversations with Porter or Hill.

9

court noted in Moore, such allegations are sufficient at this early stage of the litigation to show that an employer denied a plaintiff a reasonable accommodation for her religion.

For those reasons, the complaint does not state a failure-to-accommodate claim under Title VII or RSA 354-A on Linda's behalf. The question becomes whether the allegations in the proposed amended complaint cure the deficiencies with regard to that claim.

The proposed amended complaint adds more details regarding Linda's religious beliefs. It includes the following allegations:

> 23.1    Linda Cooper practices the Wiccan faith, which she has practiced basically her whole adult life. Aside from the tenants of her Wiccan faith set forth belove [sic], she has always grown her own food (veggies, livestock etc.) being in tune with nature, believing in a greater power larger than herself. She believes we should seek within nature what is contributory to our health and well-being. This belief system are the principles by which she has guided her life, and are contrary to the Covid19 vaccine.
>
> 23.2    Her Wiccan Faith tenants are as follows:
>
> a. Nature provides medicine.
>
> b. Natural immunity is better than manufactured immunity by pharmacies.
>
> c. When you are born, your path is already written. Along the way your path can change by the decisions you make. Wiccans trust the universe to provide them with signs to help with those decisions. Asking for signs and guidance to help them along their journey.
>
> d. Be the best person you can be by treating others with respect, regardless if their own beliefs are different than yours.
>
> e. Doing your best at all times and the energy you put out into the universe will come back to you 10-fold.
>
> f. Wiccans believe in Karma; you will be treated the way you treat others.

Doc. no. 15-1, ¶¶ 23.1-23.2.

White Mountain argues that these allegations do not cure the deficiencies in the complaint regarding Linda's failure-to-accommodate claim and that allowing the plaintiffs to

amend their complaint to include those allegations would be futile. The court agrees. It is questionable whether the allegations in the proposed amended complaint are sufficient to show that Linda held a bona fide religious belief that conflicts with the vaccination policy. See Taylor v. Milford Reg'l Med. Ctr., Inc., 733 F. Supp. 3d 8, 15-16 (D. Mass. 2024) (granting in part motion for judgment on the pleadings on religious discrimination claim because "the complaint fails to explain the specific Wiccan rituals and practices that prohibit followers from receiving vaccines"). But even if they were, the proposed amended complaint does not allege any new circumstances surrounding Linda's failure to seek a request for a religious exemption. And, as discussed, Linda's failure to seek such an exemption is fatal to her claim in Count II. Thus, for the reasons discussed above, the proposed amended complaint does not state a failure-to-accommodate claim under Title VII or RSA 354–A on Linda's behalf. Therefore, allowing the plaintiffs to add the allegations regarding Linda's religious beliefs would be futile.

2.   Emily's Raise and Promotion

In the complaint, the plaintiffs allege that White Mountain retaliated against Emily when it failed to give her a promised raise (Count III). Specifically, they allege that White Mountain promoted Emily to supervisor and promised her a raise in September 2021 before it implemented the vaccination policy. Doc. no. 1-1, ¶ 41. Emily asked Porter on approximately October 25, 2021, after White Mountain knew that she would not comply with the vaccination policy, whether she would still get her raise. Id. Mr. Porter replied, "No, not anymore." Id.

To demonstrate a claim for retaliation under Title VII, "a plaintiff must show that (i) she undertook protected conduct, (ii) she suffered an adverse employment action, and (iii) the two were causally linked." Noviello v. City of Bos., 398 F.3d 76, 88 (1st Cir. 2005). In other words,

11

in a Title VII retaliation claim, the plaintiff must show that the protected activity was the but-for cause of the adverse employment action. Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).

      White Mountain argues that, even assuming Emily meets the first two elements—by expressing her desire for a religious exemption and because she did not receive a promised raise—the complaint does not allege the required causal connection. That is, the complaint does not allege that Emily's expression of a desire for a religious exemption to the vaccination policy was the but-for cause of White Mountain withholding her raise. White Mountain's argument is persuasive.

      The complaint alleges that White Mountain's decision not to give Emily a raise "was done in retaliation for refusing to be vaccinated." Doc. no. 1-1, ¶ 41. Even assuming that allegation is plausible, it does not provide a basis for a retaliation claim because it does not allege that White Mountain retaliated against Emily for undertaking protected conduct; that is, expressing a desire for a religious accommodation. Devitt v. Sanofi-Aventis US, LLC, No. 4:23-CV-10516-MRG, 2025 WL 2207277, at *7 (D. Mass. Aug. 4, 2025) (dismissing retaliation claim because "Devitt asserts in her amended complaint that Sanofi retaliated against her 'because she refused to inject the COVID-19 vaccine.' However, it was not Devitt's request for an accommodation that led to her termination, but her failure to get the COVID-19 vaccination after her request for accommodation was denied" (citation omitted)); Zerveskes v. Wentworth-Douglass Hosp., No. 24-CV-025-SE-TSM, 2024 WL 4301375, at *6 (D.N.H. Sept. 26, 2024) (dismissing retaliation claim where the plaintiff alleged no facts to support the theory "that her application for a religious exemption to the vaccination policy was the but-for cause of" the adverse employment action). Indeed, the complaint alleges that Emily asked Porter for the first

12

time on October 28, 2025, if she could submit a request for a religious exemption, three days after he informed her that she would not be getting a raise. Doc. no. 1-1, ¶¶ 44-45.

For those reasons, the complaint does not state a claim for retaliation on behalf of Emily under Title VII or RSA 354–A.[8] The court now considers whether the allegations in the proposed amended complaint, if allowed, would change the court's analysis.

The proposed amended complaint clarifies the circumstances surrounding White Mountain's alleged failure to give Emily her promised raise. Specifically, it alleges that Emily was supposed to get a raise "right before the Covid vaccine mandate, in approximately September 2021."[9] Doc. no. 15-1, ¶ 109. It further alleges that both "the promotion and raise" never came. Id. The factual allegations regarding Emily's raise and promotion are otherwise identical.

As White Mountain argues, the allegations in the proposed amended complaint do not cure the deficiencies with regard to Emily's retaliation claim. For the reasons stated above, the proposed amended complaint does not allege that White Mountain retaliated against Emily for undertaking protected conduct. As such, it does not state a claim for retaliation and allowing the

---

[8] Viewed generously, the "statement of facts" section of the complaint contains other allegations that could possibly be perceived as retaliatory acts committed by White Mountain against Emily. Those acts are not included in the list of alleged retaliatory acts underlying Count III in the complaint, see doc. no. 1-1, ¶¶ 108-111, and the plaintiffs do not mention them in any of their briefing regarding the motion for judgment on the pleadings or their motion to amend. Therefore, the court need not address them. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Even if the plaintiffs had alleged that these acts amounted to retaliation under Title VII or RSA 354–A, however, Count III would still fail because there are no factual allegations to suggest that any act bore relation to Emily's desire for a religious exemption.

[9] As mentioned, the language and timing of Emily's promised raise in the complaint is ambiguous. The court credited the plaintiffs' statements in their objection to the motion for judgment on the pleadings that White Mountain promised Emily a raise in September 2021. Therefore, the clarifying allegations regarding the timing in the proposed amended complaint do not change the court's analysis above.

plaintiffs to amend their complaint to add these allegations would be incapable of resurrecting Emily's retaliation claim in Count III.

    B.    <u>Justification for Delay</u>

Because the court denies the plaintiffs' motion to amend on futility grounds, it does not need to address White Mountain's argument regarding the insufficiency of the plaintiffs' justification for their delay in seeking to amend their complaint. It is worth noting, however, that the plaintiffs cite Federal Rule of Civil Procedure 15(a) and New Hampshire state court cases to support their contention that the court should freely give leave to a party to amend its complaint. But, as the plaintiffs acknowledge, the plaintiffs filed their motion for leave to amend their complaint after the scheduling order's deadline to amend pleadings. Therefore, "Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard." Baez v. Baymark Detoxification Servs., Inc., 123 F.4th 62, 67 (1st Cir. 2024). "The 'good cause' standard focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant." Miceli v. JetBlue Airways Corp., 914 F.3d 73, 86 (1st Cir. 2019). "In the decisional calculus, the moving party's diligence or lack of diligence serves as the dominant criterion." Id. (quotations omitted). The plaintiffs fail to make a coherent argument that they were diligent in seeking to amend their complaint.

    C.    <u>Summary</u>

The new allegations in the proposed amended complaint do not state a claim on Linda's behalf for religious discrimination based on a failure to accommodate (Count II) or a claim on

14

Emily's behalf for retaliation based on religion (Count III). Therefore, allowing the plaintiffs to amend their complaint would be futile and the court denies their motion to amend.

The complaint remains the operative pleading in this case. The court now turns to White Mountain's motion for judgment on the pleadings.

II.   Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure Rule 12(c) provides that, "After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." A motion for judgment on the pleadings is subject to the same standard of review applicable to a motion to dismiss under Rule 12(b)(6). See Portugues-Santana v. Rekomdiv Int'l, Inc., 725 F.3d 17, 25 (1st Cir. 2013).

So, as is the case with a motion to dismiss and in accordance with the standard set forth above, to survive a motion for judgment on the pleadings, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. After crediting as true the nonconclusory factual allegations and the reasonable inferences drawn from those allegations, the court determines whether the complaint states a plausible claim for relief. Sepúlveda-Villarini, 628 F.3d at 29.

White Mountain moved for judgment on the pleadings on all counts other than Emily's failure-to-accommodate claim in Count II. As discussed, the plaintiffs voluntarily dismissed Count I in its entirety and Linda's retaliation claim in Count III.

Further, the court has already analyzed Linda's failure-to-accommodate claim in Count II and Emily's retaliation claim in Count III in the context of the futility analysis above. For the reasons stated, the complaint does not state plausible claims for relief as to those Counts.

Thus, the only claim remaining to be addressed in the context of White Mountain's motion for judgment on the pleadings is the plaintiffs' claim for wrongful discharge in Count IV. The court considers that claim now.

A wrongful discharge claim under New Hampshire law contains two elements: "(1) the employer terminated the [plaintiff's] employment out of bad faith, malice, or retaliation; and (2) the employer terminated the employment because the employee performed acts that public policy would encourage or because she refused to perform acts that public policy would condemn." Donovan v. S. New Hampshire Univ., 175 N.H. 489, 492 (2022).

Under New Hampshire law, an "employer's bad faith or malice may be established where (i) an employee is discharged for pursuing policies condoned by the employer, (ii) the record does not support the stated reason for the discharge, or (iii) disparate treatment was administered to a similarly situated employee." Hidalgo-Semlek v. Hansa Med., Inc., 498 F. Supp. 3d 236, 268 (D.N.H. 2020) (quotations omitted). "Bad faith can also be discerned from the course of events surrounding an employee's discharge, 'the manner in which the plaintiff was discharged,' or shifting reasons for an employee's termination." Id. (quoting Cloutier v. Great Atl. & Pac. Tea Co., 121 N.H. 915, 921 (1981)).

White Mountain makes several arguments in favor of dismissal, including that the plaintiffs do not allege that White Mountain fired them out of bad faith, malice, or retaliation. The court agrees that the complaint contains no allegations that could satisfy this element of a wrongful discharge claim. The complaint alleges that White Mountain implemented the vaccination policy, the plaintiffs did not comply with the policy, and, as a result, White Mountain fired them. They allege no facts that could allow the court to draw the reasonable inference that their terminations were motivated by bad faith, malice, or retaliation.

The plaintiffs have not sufficiently alleged the first element of a wrongful discharge claim and White Mountain is therefore entitled to judgment on that claim. Because the plaintiffs have not sufficiently alleged the first element of the claim, the court does not address White Mountain's other arguments in favor of judgment on the pleadings.

Conclusion

For the foregoing reasons, the plaintiffs' motion for leave to amend (doc. no. 15) is denied and the defendant's motion for judgment on the pleadings (doc. no. 10) is granted. The only claim remaining in this case is Emily Cooper's failure-to-accommodate claim in Count II.

SO ORDERED

_____
Samantha D. Elliott
United States District Judge

September 3, 2025

cc: Counsel of Record